Lauren E. Briggerman (Admitted Pro Hac Vice)
Joshua Drew (Admitted Pro Hac Vice)
Bradley E. Markano (Admitted Pro Hac Vice)
Miller & Chevalier Chartered
900 16th Street NW
Washington, DC 20006
Telephone:    202.626.5800
Facsimile:    202.626.5801
lbriggerman@milchev.com
jdrew@milchev.com

*Attorneys for Defendants National Breathe Free
Sinus & Allergy Centers LLC, Capitol Breathe
Free Sinus and Allergy Centers LLC, Arizona
Breathe Free Sinus & Allergy Centers LLC,
Breathe Free of FL LLC, Breathe Free Sinus &
Allergy Centers of Florida LLC, SoCal Breathe
Free Sinus & Allergy Centers MSO LLC, Dallas
Breathe Free Sinus & Allergy Centers LLC, Trinity
ENT and Facial Aesthetics, LLC, Nabiel Matthew
Ghanem, and Taylor Borane*

Lisa Manning (Admitted Pro Hac Vice)
Christopher B. Mead (Admitted Pro Hac Vice)
Schertler Onorato Mead & Sears, LLP
555 13th Street N.W., Suite 500 West
Washington, DC 20004
Telephone:    202.628.4199
Facsimile:    202.628.4177
lmanning@schertlerlaw.com
cmead@schertlerlaw.com

*Attorney for Defendant Manish Khanna, MD*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States *ex rel.* Michelle Nemeh,<br><br>Plaintiff and Relator,<br><br>v.<br><br>National Breathe Free Sinus & Allergy Centers, LLC, et al.,<br><br>Defendants. | Civil Action No. 23-cv-02009-DGC<br><br>**MOTION TO DISMISS AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT**<br><br>**ORAL ARGUMENT REQUESTED** |

# **TABLE OF CONTENTS**

BACKGROUND ..................................................................................................... 3

    A.   Identification of Defendants ................................................................. 3

    B.   Identification of Relator ...................................................................... 4

    C.   Procedural History ............................................................................. 4

LEGAL STANDARD ........................................................................................... 5

ARGUMENT ......................................................................................................... 6

I.      THE FALSE CLAIMS ACT CLAIMS SHOULD BE DISMISSED
        FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6). ............. 6

    A.   The FAC Fails to Plead Falsity. .......................................................... 6

        1.   The FAC Fails to Allege That Physicians Did Not "Honestly
            Hold" The View That Sinuplasties Were Medically
            Necessary. ............................................................................. 7

        2.   Relator Does Not Allege that Certifications of Medical
            Necessity "Implie[d] the Existence of Facts That Did Not
            Exist." .................................................................................. 9

    B.   The FAC Fails to Plead Materiality ...................................................... 12

    C.   The FAC Fails to Plead Causation. ..................................................... 14

    D.   The FAC Fails to Plead Scienter. ....................................................... 15

    E.   Alleged "Additional Fraudulent Practices" do not Support Relator's
        Claims. ............................................................................................ 15

II.     THE FAC DOES NOT SATISFY RULE 9(B)'S PARTICULARITY
        REQUIREMENT. ................................................................................. 16

    A.   The FAC Fails to Allege "Reliable Indicia" that False Claims Were
        Submitted. ........................................................................................ 17

    B.   The FAC's Allegations as to Specific Patients Fall Short of Rule
        9(b)'s Particularity Standard. ............................................................. 19

    C.   Relator Has Failed to Plead Claims Against Most Defendants with
        Particularity Under Rule 9(b). ............................................................ 20

III.    THE CONSPIRACY CLAIM SHOULD BE DISMISSED. ......................... 21

IV.    THE COURT LACKS PERSONAL JURISDICTION OVER MANY
       OF THE DEFENDANTS. ...................................................................24

V.     THE QUI TAM PROVISIONS OF THE FCA VIOLATE THE
       CONSTITUTION. .......................................................................26

VI.    AMENDING THE COMPLAINT WOULD BE FUTILE..............................28

CONCLUSION ...........................................................................................29

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

MILLER & CHEVALIER
CHARTERED

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States ex rel. Armstrong-Young v. Carelink Hospice Servs., Inc.*,
No. 15-cv-04095, 2018 WL 4773111 (N.D. Cal. Oct. 1, 2018) ............................ 17, 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................................ 5

*United States ex rel. Bogina v. Medline Indus., Inc.*,
809 F.3d 365 (7th Cir. 2016) ......................................................................................... 9

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) ...................................................................................... 26

*Cain v. Salish Kootenai Coll., Inc.*,
No. 12-cv-00181, 2019 WL 1643634 (D. Mont. Apr. 16, 2019) ................................ 16

*United States ex rel. Campie v. Gilead Scis., Inc.*,
862 F.3d 890 (9th Cir. 2017) ...................................................................................... 12

*United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*,
290 F.3d 1301 (11th Cir. 2002) .................................................................................. 12

*Dan Abrams Co. LLC v. Medtronic Inc.*,
850 F. App'x 508 (9th Cir. 2021) ............................................................................... 11

*Desert Plants Conservancy LLC v. Parsons*,
No. 11-cv-01599, 2012 WL 13019154 (D. Ariz. July 6, 2012)................................... 21

*Destfino v. Reiswig*,
630 F.3d 952 (9th Cir. 2011) ...................................................................................... 21

*United States ex rel. Duffy v. Lawrence Mem'l Hosp.*,
No. 14-cv-2256, 2018 WL 4748345 (D. Kan. Oct. 2, 2018), *aff'd sub
nom.*, *United States ex rel. Janssen v. Lawrence Mem'l Hosp.*, 949 F.3d
533 (10th Cir. 2020)..................................................................................................... 14

*East v. Cnty. of Riverside*,
No. 23-cv-00959, 2024 WL 1012975 (D. Ariz. Mar. 8, 2024)..................................... 24

MILLER & CHEVALIER
CHARTERED

*United States ex rel. Hartpence v. Kinetic Concepts, Inc.*,
  44 F.4th 838 (9th Cir. 2022) ........................................................... 13

*United States ex rel. Jacobs v. Advanced Dermatology & Skin Cancer
  Specialists, P.C.*,
  No. 20-cv-01373, 2022 WL 19914511 (C.D. Cal. Sep. 28, 2022) ..................... 25

*James River Ins. Co. v. Thompson*,
  No. 20-cv-01052, 2021 WL 424088 (D. Ariz. Feb. 8, 2021) ....................... 28

*Jones v. GEICO Cas. Co.*,
  No. 20-cv-01734, 2021 WL 3602855 (D. Ariz. Aug. 13, 2021) ................... 21

*Lopez v. Smith*,
  203 F.3d 1122 (9th Cir. 2000) (en banc) ....................................... 28

*United States ex rel. Martinez v. KPC Healthcare Inc.*,
  No. 15-cv-01521, 2017 WL 10439030 (C.D. Cal. June 8, 2017).................... 23

*United States ex rel. Mateski v. Raytheon Co.*,
  745 F. App'x 49 (9th Cir. 2018) ................................................ 6

*United States ex rel. McCarthy v. Straub Clinic & Hosp., Inc.*,
  140 F. Supp. 2d 1062 (D. Haw. 2001) ........................................... 25

*United States ex rel. N. Santiam Watershed Council v. Kinross Gold USA,
  Inc.*,
  No. 96-cv-3673, 1998 WL 118176 (N.D. Cal. Mar. 9, 1998) ..................... 25

*United States ex rel. Polansky v. Exec. Health Res., Inc.*,
  599 U.S. 419 (2023) ........................................................ 26, 27

*United States ex rel. Puhl v. Terumo BCT*,
  No. 17-cv-8446, 2019 WL 6954317 (C.D. Cal. filed Sep. 12, 2019)............ 11, 14

*United States ex rel. Rose v. Stephens Inst.*,
  909 F.3d 1012 (9th Cir. 2018) .................................................. 7

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
  591 U.S. 197 (2020) ........................................................... 27

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) .................................................. 21

MILLER & CHEVALIER
CHARTERED

*Hawaii ex rel. Torricer v. Liberty Dialysis-Hawaii LLC*,
    512 F. Supp. 3d 1096 (D. Haw. 2021) ................................................22, 24

*United States v. AseraCare, Inc.*,
    938 F.3d 1278 (11th Cir. 2019) ...............................................................7

*United States v. Comstor Corp.*,
    308 F. Supp. 3d 56 (D.D.C. 2018) ........................................................15

*United States v. DaVita Inc.*,
    No. 18-cv-01250, 2021 WL 1087769 (C.D. Cal. filed Feb. 1, 2021),
    *aff'd sub nom. Holzner v. DaVita Inc.*, No. 21-55261, 2022 WL 726929
    (9th Cir. Mar. 10, 2022) ................................................................11, 13

*Winter ex rel. United States v. Gardens Reg'l Hosp. & Med. Ctr., Inc.*,
    953 F.3d 1108 (9th Cir. 2020) ..................................................7, 8, 9, 10

*United States v. Heartland Hospice, Inc.*,
    386 F. Supp. 3d 884 (N.D. Ohio 2019) ..................................................18

*Calisesi ex rel. United States v. Hot Chalk, Inc.*,
    No. 13-cv-01150, 2015 WL 1966463 (D. Ariz. May 1, 2015) ....................22

*United States v. HPC Healthcare, Inc.*,
    723 F. App'x 783 (11th Cir. 2018) ........................................................18

*United States v. IASIS Healthcare LLC*,
    No. 15-cv-00872, 2016 WL 6610675 (D. Ariz. Nov. 9, 2016) ..............23, 24

*Ebeid ex rel. United States v. Lungwitz*,
    616 F.3d 993 (9th Cir. 2010) ...........................................................6, 16

*United States v. San Bernardino Mountains Cmty. Hosp. Dist.*,
    No. 17-cv-00002, 2018 WL 5264362 (C.D. Cal. June 14, 2018)................13

*United States v. Science Applications International Corp.*,
    626 F.3d 1257 (D.C. Cir. 2010) ...........................................................15

*United States v. United Parcel Serv., Inc.*,
    No. 08-cv-7284, 2012 WL 12973176 (C.D. Cal. Apr. 26, 2012) ...............18

*United States v. Universal Fruits & Vegetables Corp.*,
    370 F.3d 829 (9th Cir. 2004) ...............................................................25

MILLER & CHEVALIER
CHARTERED

*United States v. Valley Campus Pharmacy, Inc.*,
   No. 16-cv-4777, 2021 WL 5406148 (C.D. Cal. Oct. 12, 2021), *aff'd sub
   nom.*, *Gharibian ex rel. United States v. Valley Campus Pharmacy, Inc.*,
   No. 21-56253, 2023 WL 195514 (9th Cir. Jan. 17, 2023) ........................... 10

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
   579 U.S. 176 (2016) ................................................................................. 15

*United States ex rel. Wall v. Vista Hospice Care, Inc.*,
   No. 07-cv-00604, 2016 U.S. Dist. LEXIS 80160 (N.D. Tex. 2016) ........... 19

*Wool v. Tandem Computers Inc.*,
   818 F.2d 1433 (9th Cir. 1987) ................................................................. 20

*United States ex rel. Zafirov v. Florida Medical Associates, LLC*,
   751 F. Supp. 3d 1293 (M.D. Fla. 2024) ............................................. 27, 28

**Statutes**

31 U.S.C. § 3729 ............................................................................................ 25

31 U.S.C. § 3730(b) ....................................................................................... 26

31 U.S.C. § 3732(a) ........................................................................................ 25

Ariz. Rev. Stat. § 10-3301 ................................................................................ 8

**Other Authorities**

Fed. R. Civ. P. Rule 9(b) ........................................................................*passim*

Fed. R. Civ. P. 15(a)(2) ................................................................................. 28

Rule 12(b)(6) ........................................................................................... 5, 6, 28

S. Sainio, K. Blomgren, A. Koskinen & M. Lundberg, *Frontal Sinus
   Balloon Sinuplasty-Patient Satisfaction and Factors Predicting
   Reoperation*, OTO Open, vol. 7, no. 1, e23 (2023) ................................. 11

U.S. Const. art. II, § 1, cl. 1. ......................................................................... 26

U.S. Const. art. II, § 2, cl. 2 .......................................................................... 26

MILLER & CHEVALIER
CHARTERED

Defendants, pursuant to Federal Rules of Civil Procedure 8(a), 9(b), 12(b)(2), and 12(b)(6), hereby move for dismissal of Relator's First Amended Complaint with prejudice. This motion is supported by the following Memorandum of Points and Authorities. The undersigned counsel hereby certify that, before filing this motion, they met and conferred with Relator's counsel pursuant to Local Rule 12.1(c) regarding the issues herein. The parties were unable to agree that the pleading was curable by amendment.

## MEMORANDUM OF POINTS AND AUTHORITIES

Relator Michelle Nemeh's First Amended Complaint ("FAC") fails to cure the fatal deficiencies present in her initial complaint and must be dismissed. The FAC alleges that Defendants – a seemingly indiscriminately selected group of Ear, Nose, and Throat ("ENT") clinics, management services companies, and their executives – violated the False Claims Act ("FCA") by billing the government for balloon sinuplasty procedures that allegedly were not medically necessary. But the FAC still contains no allegations regarding physician treating decisions or bills submitted to the government that would allow the Court to infer that any treatment billed to the government was not medically necessary. In short, the FAC fails to identify a single claim to the government that allegedly was false. Relator also pleads virtually no facts about the clinics around the country that she has named as Defendants, instead basing her claims on speculation that they *must have* committed fraud based solely on their undefined relationship with Defendant National Breathe Free Sinus & Allergy Centers LLC ("NBF"), which is inadequate to state a claim as a matter of law. These failures demonstrate that Relator cannot plead the required elements of an FCA

claim, including falsity, materiality, and knowledge. The FAC should therefore be dismissed under Federal Rules of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim.

Despite adding new paragraphs to the original complaint, the FAC also still falls far short of meeting the heightened pleading standard for fraud under Rule 9(b). Relator attempts to cure this deficiency by highlighting ten specific patient examples. But Relator does not allege that any of these patients actually received medically unnecessary treatment and instead relies impermissibly on "information and belief" that false claims were submitted to the government. Relator also lumps many Defendants together and does not allege with specificity the "who, what, where, when, [or] how" as to these patient examples. As a result, the FAC does not meet the exacting pleading requirements of Rule 9(b).

The Court should also dismiss Relator's conspiracy claim. In addition to failing to plead the elements of an FCA claim, the FAC still does not allege any agreement by Defendants to defraud the government, or actions taken by Defendants in furtherance of such an agreement. Without a meeting of the minds and related acts in furtherance, the conspiracy claim cannot stand.

Furthermore, the FAC does not, and cannot, plead new facts to assert personal jurisdiction over most Defendants. The FAC should be dismissed as to Defendants Capitol Breathe Free Sinus and Allergy Centers, LLC, Breathe Free of Florida, LLC, Breathe Free Sinus & Allergy Centers of Florida, LLC, SoCal Breathe Free Sinus & Allergy Centers MSO, LLC, and Dallas Breathe Free Sinus & Allergy Centers, LLC ("Dallas Breathe

Free") under Rule (12)(b)(2) because these corporate Defendants are located outside Arizona and do not transact business in the state; nor does Relator allege that any patients were treated in these clinics.

Finally, the case should be dismissed given the recent court rulings holding that the *qui tam* provisions of the FCA violate the Constitution.

In light of the foregoing flaws with the FAC, and as set out in greater detail below, amending the FAC would be futile, and therefore, it should be dismissed with prejudice.

## BACKGROUND

### A.    Identification of Defendants

Defendant NBF is a Delaware management services organization ("MSO") that partners with various physician-owned ENT practices around the country to facilitate the provision of certain non-medical services through third party providers. NBF does not provide medical care or billing services. Defendants Manish Khanna, MD, Nabiel Matthew Ghanem, and Taylor Borane are founders and/or officers of NBF. Mr. Ghanem and Dr. Khanna are also co-owners of Defendant Capitol Breathe Free Sinus and Allergy Centers, LLC, a group of ENT clinics in the Washington D.C. region.

The other entity defendants include independently owned and operated ENT clinics from around the country that have partnered with NBF, including Arizona Breathe Free Sinus & Allergy Centers, LLC ("Arizona Breathe Free"); Breathe Free Sinus & Allergy Centers of Florida, LLC; Dallas Breathe Free, Trinity ENT and Facial Aesthetics, LLC ("Trinity ENT"), and SoCal Breathe Free Sinus & Allergy Centers MSO, LLC. Relator has

MILLER & CHEVALIER
CHARTERED

also named Breathe Free of FL, LLC as a Defendant, but this entity is not operational. In addition, the FAC identifies (but does not separately name as defendants) three other clinics: (1) Relator's former employer, Scottsdale Sinus and Allergy Center, (2) Oasis Ear, Nose, and Throat, and (3) Premier Sinus & Allergy Center ("Premier"). Relator claims without support that these three entities are alter egos ("d/b/as") of NBF. Premier is not a clinic within the NBF partnership.

### B.    Identification of Relator

Relator Michelle Nemeh is a Physician's Assistant, or "PA." From August 2021 to May 2023, Ms. Nemeh was employed by Defendant Trinity ENT and non-defendant Scottsdale Sinus and Allergy Center, both of which are ENT clinics in Arizona. FAC ¶ 7. She alleges that she and other PAs were hired, trained, and supervised by NBF personnel during the months she was employed at the Scottsdale and Trinity ENT clinics. FAC ¶¶ 48-64. These interactions form the basis of her claims that the defendants sought and obtained reimbursement from federal payors for procedures that were not medically necessary. *See* FAC ¶¶ 50-62. She does not allege that she worked at any other of Defendant clinics.

### C.    Procedural History

Relator filed the initial complaint in this action under seal on September 25, 2023. Compl., ECF No. 1. After two years to investigate the claims, the United States Department of Justice ("DOJ") declined to intervene, and the case was unsealed on June 9, 2025. *See Ex-Parte* Sealed Notice of Non-Intervention, ECF No. 12, and Order, ECF No. 13. The

Defendants named in the initial complaint[1] moved to dismiss on October 17, 2025. Mot. for Leave to File Statement of Interest, ECF No. 30. The motion to dismiss argued, *inter alia*, that: (1) Relator had failed to plead with particularity that any patient received medically unnecessary treatment; (2) Relator did not plead with particularity that any Defendants' alleged actions were material to the government's decision to pay; (3) Relator had pled no facts that could lead to an inference that individual Defendants submitted false claims, no facts about the treatment decisions of the doctors who allegedly submitted those claims, and no facts at all about many of the Defendants named; and (4) Relator had not asserted a basis for personal jurisdiction over many of the Defendants.

Relator filed the FAC on November 3, 2025. ECF No. 32. However, as is set out below, none of the above-mentioned deficiencies have been cured with new factual pleadings, and so the FAC should be dismissed with prejudice.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts sufficient to infer a claim that is "plausible on its face," which rises "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Claims under the FCA are also subject to the heightened pleading standards of Rule 9(b), which demand that

---

[1] Defendants named in the initial Complaint include: *National Breathe Free Sinus & Allergy Centers LLC, Capitol Breathe Free Sinus and Allergy Centers LLC, Arizona Breathe Free Sinus & Allergy Centers LLC, Breathe Free of FL LLC, Breathe Free Sinus & Allergy Centers of Florida LLC, SoCal Breathe Free Sinus & Allergy Centers MSO LLC, Dallas Breathe Free Sinus & Allergy Centers LLC, Nabiel Matthew Ghanem, and Taylor Borane.*

MILLER & CHEVALIER
CHARTERED

plaintiffs "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). "To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc*., 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Ebeid*, 616 F.3d at 998).

The Rule 9(b) standard is demanding: courts routinely dismiss cases in which relators attempt to generally allege that false claims were submitted to the government without identifying who submitted them, what government standards were violated, and how the alleged violation took place. *See United States ex rel. Mateski v. Raytheon Co*., 745 F. App'x 49, 50 (9th Cir. 2018) (applying materiality standard to dismiss claims that defendant failed to perform tests when plaintiff failed to identify specific tests, when they were performed, and how those tests fell short of requirements).

## ARGUMENT

### I. THE FALSE CLAIMS ACT CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6).

#### A. The FAC Fails to Plead Falsity.

To allege that a "false or fraudulent claim" has been made to the government, a plaintiff is required to plead with particularity that there was an explicit misrepresentation to the government (an "express false claim"), or that submissions to the government for payment contained an "implied false claim," which "occurs when an entity has *previously* undertaken to expressly comply with a law, rule, or regulation [but does not], and that

MILLER & CHEVALIER
CHARTERED

obligation is implicated by submitting a claim for payment even though a certification of compliance is not required in the process of submitting the claim." *United States ex rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1017 (9th Cir. 2018). Relator bases her claims primarily on the theory of implied certification of false claims that patient treatment was medically necessary.

As courts have recognized, whether a given course of treatment is "medically necessary" is inherently a subjective opinion whose answer may vary from one doctor to another. *See, e.g.*, *United States v. AseraCare, Inc.*, 938 F.3d 1278, 1296 (11th Cir. 2019) (recognizing that "physicians applying their clinical judgment about a patient[] . . . could disagree, and neither physician [] be wrong"). Thus, to establish that false claims were made, Relator must plead more than just a "reasonable difference of opinion" among medical professionals about the best course of patient treatment. The Ninth Circuit has recognized two circumstances in which a plaintiff can meet this pleading standard: (1) "the opinion [of the physician] is not honestly held," or (2) the certification of medical necessity "implies the existence of facts . . . that do not exist." *Winter ex rel. United States v. Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 953 F.3d 1108, 1119 (9th Cir. 2020).

As is set out below, Relator has not pled facts sufficient to support either of the two bases to allege fraud identified in *Winter*. As a result, she cannot plead falsity, and the FAC must be dismissed.

### 1. The FAC Fails to Allege That Physicians Did Not "Honestly Hold" The View That Sinuplasties Were Medically Necessary.

Under *Winter*, a physician's certification of medical necessity may be false for

MILLER & CHEVALIER
CHARTERED

purposes of the FCA if it is not "honestly held." *Winter*, 953 F.3d at 1118.The FAC does not plead any facts to show that treating physicians did not "honestly [hold]" the belief that the procedures at issue were medically necessary. Indeed, Relator includes virtually no allegations about the physicians themselves. Throughout Relator's 52-page FAC, there are no allegations about how physicians determined whether balloon sinuplasty procedures were appropriate from case to case, what factors they considered, or what information was available to them in the decision-making process.

Relator does not claim that physicians knew about or participated in the alleged conspiracy to submit fraudulent claims, or that physicians received training or incentives from NBF to induce them to submit false claims. Relator does not even attempt to explain how NBF could have undermined physician authority if it wanted to: she does not allege that NBF owned or controlled medical practices, that it employed the physicians themselves, or that it had authority over medical decisions. On the contrary, under Arizona law, medical practices like Trinity ENT, where Relator was employed, are required to be controlled by physicians, not third-party businesses. *See generally, e.g.*, Ariz. Rev. Stat. § 10-3301. Relator does not allege that this requirement was violated.

Instead, the FAC's only allegations attempt to suggest that physicians lacked a legitimate basis for their treatment decisions are conclusory or based "on information and belief." *See, e.g.*, FAC ¶¶ 80, 82, 83, 84, 85, 87, 88, 89 (stating conclusion that medical procedure was "premised on" allegedly "false documentation," without facts supporting the basis for the physician's decision); *id*. ¶¶ 71, 80, 82-87, 89, 95, 96 (allegations based on

MILLER & CHEVALIER
CHARTERED

"information and belief"). Courts have repeatedly held that such vague allegations, including "upon information and belief," cannot satisfy Rule 9(b). *See, e.g.*, *United States ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 370 (7th Cir. 2016) ("Allegations based on 'information and belief' thus won't do in a fraud case, for 'on information and belief' can mean as little as 'rumor has it that . . . .'").

Relator's pleadings contrast sharply with those in *Winter*, where the Ninth Circuit identified circumstances sufficient to plead a false claim. There, the relator alleged that the defendant medical center fraudulently caused patients to be admitted for inpatient hospitalization that was not medically necessary. *Winter*, 953 F.3d at 1114-1115. The court held that the relator sufficiently alleged false claims where the relator specifically identified sixty-five patients who did not qualify for admission based on the hospital's own established criteria. *Id*. The relator also alleged that physicians (not PAs) were "coached" to admit more patients, and a physician who worked at the defendant medical center (not a PA) confirmed that he had been pressured to recommend patients for medically unnecessary procedures. *Id*. at 1120-1121. Relator's failure to plead similar facts showing suspicious changes in physician behavior, false representations by physicians, or undue influence on physicians by third parties, fatally undermines her claims.

> ### 2. *Relator Does Not Allege that Certifications of Medical Necessity "Implie[d] the Existence of Facts That Did Not Exist."*

The Ninth Circuit has also recognized one other limited circumstance in which a certification of medical necessity may be false: if it "implies the existence of facts—namely, that [the service] is needed to diagnose or treat a medical condition, in accordance with

CHARTERED
MILLER & CHEVALIER

9

accepted standards of medical practice—that do not exist." *Winter*, 953 F.3d at 1119. As the *Winter* court explained, under government billing requirements, a medically necessary procedure is one that "meets, but does not exceed, the patient's medical need, and is furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the patient's condition . . . in a setting appropriate to the patient's medical needs and condition." *Id*. at 1113. If such accepted standards were violated, the treatment was not medically necessary, and the claim may be false. *Id*.

Relator cannot show the "existence of facts that did not exist" related to government requirements or generally accepted standards for the provision of balloon sinuplasties because there are no such requirements. The FAC makes conclusory claims that sinuplasty patients meet certain alleged "prerequisite requirements," such as being treated with antibiotics in the past year. *See* FAC ¶¶ 46, 96. However, Relator identifies no basis in law, regulation, or government guidance that supports the claim that the identified "prerequisites" were actually conditions for reimbursement by the government payor. It is undisputed that the government has never published specific medical necessity requirements for balloon sinuplasty procedures. Indeed, Relator appears to cite requirements set by *private payors* as applicable to government payors. *See* FAC ¶¶ 46, 58, 59, 61, 69, 70, 78 (noting that alleged standards are required by private insurers). But the alleged violation of private payor requirements is not a basis for an FCA claim. *See, e.g.*, *United States v. Valley Campus Pharmacy, Inc.*, No. 16-cv-4777, 2021 WL 5406148, at *4 (C.D. Cal. Oct. 12, 2021), *aff'd sub nom.*, *Gharibian ex rel. United States v. Valley Campus*

MILLER & CHEVALIER
CHARTERED

*Pharmacy, Inc.*, No. 21-56253, 2023 WL 195514 (9th Cir. Jan. 17, 2023) (holding that the relator's reliance on private insurer requirements was not enough to establish false claims); *United States ex rel. Puhl v. Terumo BCT*, No. 17-cv-8446, 2019 WL 6954317, at \*4 (C.D. Cal. filed Sep. 12, 2019) (same). Further, the FAC does not allege the existence of consensus medical statements, definitive studies, or authoritative industry guidelines that could plausibly support a claim that conduct was not "[f]urnished in accordance with accepted standards of medical practice."[2] CMS Manual, Pub. 100-08, § 3.6.2.2. Courts have consistently held that failure to identify such standards can require dismissal of FCA claims based on medical necessity. *See Dan Abrams Co. LLC v. Medtronic Inc.*, 850 F. App'x 508, 509 (9th Cir. 2021) (upholding dismissal of FCA claim for failure to allege that surgical devices were not reasonable and necessary, noting the absence of allegations about published studies or accepted standards of medical practice); *United States v. DaVita Inc.*, No. 18-cv-01250, 2021 WL 1087769 (C.D. Cal. filed Feb. 1, 2021), *aff'd sub nom. Holzner v. DaVita Inc.*, No. 21-55261, 2022 WL 726929 (9th Cir. Mar. 10, 2022) (unpublished)

---

[2] Relator's failure to identify such sources is unsurprising. Published literature supports that balloon sinuplasties are effective, minimally invasive and relatively low risk, and are prescribed for a variety of conditions based on factors that may vary from case to case and from physician to physician. *See* American Academy of Otolaryngology – Head and Neck Surgery, Position Statement: Dilation of sinuses, any method (Apr. 21, 2021) (discussing treatment standards, and noting that "[t]he final decision regarding use of techniques or instrumentation for sinus [ostial dilation] surgery is the responsibility of the attending surgeon."); S. Sainio, K. Blomgren, A. Koskinen & M. Lundberg, *Frontal Sinus Balloon Sinuplasty-Patient Satisfaction and Factors Predicting Reoperation*, OTO Open, vol. 7, no. 1, e23 (2023) ("combining retrospective data and a patient questionnaire on frontal sinus balloon dilation . . . found a technical success rate of 93.6% and a patient satisfaction rate of 88.5%.").

MILLER & CHEVALIER
CHARTERED

(finding that relator, a physician, did not allege procedures were unnecessary when he failed to present uncontroverted medical support for his opinion, despite his citations to his own medical expertise, numerous peer-reviewed medical studies and journal articles, and clinical guidance materials).

Relator's alternative theory that physicians made implied false certifications of the accuracy of data in the underlying record—*see* FAC ¶ 29—also cannot support her claims. Relator does not plead facts supporting that these allegedly "falsified" records actually influenced physician decision-making. The FCA "does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe." *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1309–10 (11th Cir. 2002).

### B.  The FAC Fails to Plead Materiality.

Relator's claims also must be dismissed because she cannot satisfy the "demanding" standard for alleging materiality under the FCA. *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 905 (9th Cir. 2017) (quoting *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 194 (2016)). To meet that standard, Relator must plead facts showing that the government would have refused to pay for procedures if it had known of the alleged conduct.

Relator cannot merely rely on general claims, such as those that appear in the FAC at paragraphs 30, 31, 33, 36, and 37, that the government refuses to pay for treatment that

MILLER & CHEVALIER
CHARTERED

is not "medically necessary." As courts in this circuit have recognized, "'the mere fact that [medical necessity] is a condition of payment, without more, does not establish materiality.'" *DaVita*, 2021 WL 1087769, at *6 (quoting *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 490 (3d Cir. 2017)). Instead, for a false statement to be material, a plaintiff must plausibly allege that the violations are "'so central' to the claims that the government 'would not have paid these claims had it known'" of the violations. *United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 44 F.4th 838, 846 (9th Cir. 2022) (quoting *Winter*, 953 F.3d at 1121).

Relator's claims about certifications of medical necessity do not meet this standard. As discussed above in Section I.2, Relator's basis for claiming that procedures were not medically necessary is that the patients lacked alleged "prerequisite requirements," such as a prior course of antibiotics. *See* FAC ¶¶ 46, 96. But because Relator has not identified any statute, regulation, guidance, or medical standard supporting that the government considers these prerequisites when paying claims, she cannot establish materiality here. *See United States v. San Bernardino Mountains Cmty. Hosp. Dist.*, No. 17-cv-00002, 2018 WL 5264362, at *8 (C.D. Cal. June 14, 2018) (dismissing FCA claim for failure to plead materiality where "[r]elator fail[ed] to allege that . . . the government denied any claims for payment based on failure to meet [the relevant regulatory] requirements"); *DaVita*, 2021 WL 1087769, at *6 (claims not material when cited studies and guidance did not clearly establish relator's alleged standard for medical necessity).

Relator also has failed to allege materiality for her claims that some Defendants

MILLER & CHEVALIER
CHARTERED

modified data in patient medical records. FAC ¶ 29. Without pleading that the alleged changes to documents "actually affected a reimbursement decision or reimbursement rate, or likely would have had such an effect," Relator cannot establish materiality for these allegations. *United States ex rel. Duffy v. Lawrence Mem'l Hosp.*, No. 14-cv-2256, 2018 WL 4748345, at *8 (D. Kan. Oct. 2, 2018), *aff'd sub nom.*, *United States ex rel. Janssen v. Lawrence Mem'l Hosp.*, 949 F.3d 533 (10th Cir. 2020).

### C.     The FAC Fails to Plead Causation.

Relator has also failed to sufficiently plead causation. To do so, Relator must plead with particularity that physicians were induced to bill the government for improper balloon sinuplasty procedures that would not have taken place absent Defendants' conduct. *See United States ex rel. Puhl v. Terumo BCT*, No. 17-cv-8446, 2019 WL 6954317, at *4 (C.D. Cal. filed Sep. 12, 2019) (dismissing FCA claims under 9(b) where allegations left "several gaps in the causal chain" because relator did not explain how the defendant "convinced providers to abandon their independent judgment and incorrectly bill Medicare"). As is set out in greater detail above, Relator has not made any such allegations about physician treatment decisions in the FAC. Further, Relator has not pled with particularity that any Defendant was personally involved in—or even influenced—a medical billing decision that was submitted to the government. Without such allegations, Relator has not identified "the who, what, when, where, and how" required to support her claims of causation. *Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (quotation marks omitted).

### D. The FAC Fails to Plead Scienter.

In addition, Relator has failed to plead the requisite scienter under the FCA. To meet the scienter requirement, "plaintiffs [must] plead the factual basis which gives rise to a strong inference of fraudulent intent." *United States v. Comstor Corp.*, 308 F. Supp. 3d 56, 88 (D.D.C. 2018) (quoting *United States ex rel. Tessler v. City of New York*, 712 F. App'x 27, 29 (2d Cir. 2017). Even at the pleading stage, courts undertake "strict enforcement" of the scienter requirement, *United States v. Science Applications International Corp.*, 626 F.3d 1257, 1270 (D.C. Cir. 2010), in order to allay "concerns about fair notice and open-ended liability," *United States ex rel. Escobar*, 579 U.S. 176, 192 (2016).

Relator cannot meet this standard. She has pled no facts to show that any Defendant, let alone all Defendants, submitted false claims to a federal payer with the intent to defraud, much less "a strong inference" of such intent. Even where Relator identifies ten purported specific examples of patients, she fails to allege that Defendants submitted any false claims to a federal payer for reimbursement, let alone with fraudulent intent. *Id.* ¶¶ 60-70.

### E. Alleged "Additional Fraudulent Practices" do not Support Relator's Claims.

In addition to claims that Defendants caused submission of medically unnecessary claims, Relator injects a series of alleged "additional fraudulent practices," FAC ¶¶ 67-78, none of which are supported by particularized factual allegations. Relator does not articulate how these allegations are relevant to her FCA claims. The FAC does not identify any government billing requirements that were violated, does not plead who was involved in the alleged acts, and does not allege that any specific claims were ever submitted to the

MILLER & CHEVALIER
CHARTERED

government in relation to these activities. Accordingly, to the extent Relator intends to base her FCA claims on these "other" allegations, she has failed to adequately plead them. *See Cafasso*, 637 F.3d at 1055.

## II.   THE FAC DOES NOT SATISFY RULE 9(B)'S PARTICULARITY REQUIREMENT.

The FAC does not meet the rigorous standards of Rule 9(b). Rule 9(b) "requires a party to 'state with particularity the circumstances constituting fraud or mistake,' including 'the who, what, when, where, and how of the misconduct charged.'" *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). Under this heightened pleading standard a relator cannot prevail merely by alleging that Defendants engaged in "unsavory conduct," or even by identifying violations of statutory or regulatory requirements. *See Cafasso*, 637 F.3d at 1058 ("unsavory conduct is not, without more, actionable under the FCA"). Indeed, even if a relator alleges "particular details of a scheme to submit false claims," such details are not enough to establish an FCA claim unless there are also particular pleadings showing either (1) <u>reliable indicia</u> that lead to a strong inference that claims were actually submitted" or (2) "<u>representative examples</u>" of claims that were actually submitted to the government. *Ebeid*, 616 F.3d 998–99.

Further, Rule 9(b)'s pleading standard does not allow "lump pleading" or grouping of defendants into categories. Instead, Relator is required to satisfy the particular pleading requirement "as to *each defendant*." *Cain v. Salish Kootenai Coll., Inc.*, No. 12-cv-00181, 2019 WL 1643634, at *2 (D. Mont. Apr. 16, 2019). Relator's failure to do so here mandates dismissal of her claims as to most Defendants.

### A.    The FAC Fails to Allege "Reliable Indicia" that False Claims Were Submitted.

Rule 9(b) requires that Relator identify "reliable indicia" that false claims were submitted to the government. For the reasons stated above, Relator has not pled facts sufficient to support that any Defendant actually caused physicians to submit false claims to the government. But even if a scheme to incentivize balloon sinuplasty procedures or to alter patient records is alleged at a general level, Relator has, at most, pled that Defendants engaged in "unsavory conduct." *Cafasso*, 637 F.3d at 1058. "It is not the case that any breach of contract, or violation of regulations or law, or receipt of money from the government where one is not entitled to receive the money, automatically gives rise to a claim under the FCA." *Id*. (quoting *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1265 (9th Cir. 1996) (internal quotations omitted)).

*United States ex rel. Armstrong-Young v. Carelink Hospice Servs., Inc*., No. 15-cv-04095, 2018 WL 4773111 (N.D. Cal. Oct. 1, 2018) is informative. There, the social worker relator alleged that the defendant caused ineligible patients to be admitted to hospice care and billed the government for that treatment. In support of this claim, the relator pled that the defendant "knowingly and deliberately pressured and encouraged all its employees, including physicians, nurses, social workers and support staff to maximize the number of patient admissions and/or recertification of eligibility without care, regards or attention to patients were eligible for Medicare hospice benefits." *Id*. at *3-4. Also as here, the relator pled "a number of facts regarding violations of Medicare rules, policies, procedures, and regulations unrelated to any particular false claim." *Id*. However, the court dismissed the

case upon finding that the relator's claims about billing were "conclusory," and that as a result the relator had not alleged "reliable indicia" that false claims were submitted. *Id*. at *4.

Relator's allegations are similarly conclusory. Relator was not a physician, did not have any role in billing the government, worked only in a single Defendant clinic, Trinity ENT, and does not have direct knowledge of the medical practices or billing decisions of any of the other Defendants in this case. Courts addressing FCA claims have repeatedly found that although a relator is not required to have personal knowledge of specific false claims, a complaint must at least plead a non-speculative basis to show that claims were submitted to the government. In contrast, merely pleading knowledge of a scheme to defraud, without stating the basis for alleging that the scheme resulted in false claims, is not enough to meet the pleading standards of Rule 9(b). *See, e.g.*, *United States v. United Parcel Serv., Inc*., No. 08-cv-7284, 2012 WL 12973176, at *3 (C.D. Cal. Apr. 26, 2012) (dismissing case where relator had no non-speculative knowledge of bills to the government); *United States v. HPC Healthcare, Inc.*, 723 F. App'x 783, 790 (11th Cir. 2018) (finding no indicia of reliability, noting that the relator did not "allege the basis of her knowledge of the defendants' fraudulent billing practices—a process she was far removed from as a social worker"); *United States v. Heartland Hospice, Inc.*, 386 F. Supp. 3d 884, 901 (N.D. Ohio 2019) (relator failed to allege specific personal knowledge related directly to billing practices with sufficient detail to support claims).

In the absence of such details, the allegations in the FAC, "which identif[y] a general

MILLER & CHEVALIER
CHARTERED

sort of fraudulent conduct but specif[y] no particular circumstances of any discrete fraudulent statement, [are] precisely what Rule 9(b) aims to preclude." *Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1057 (9th Cir. 2011). *See also United States ex rel. Wall v. Vista Hospice Care, Inc.*, No. 07-cv-00604, 2016 U.S. Dist. LEXIS 80160, at *69-70 (N.D. Tex. 2016) (even "aggressive marketing and enrollment policies," though "ill-advised," are not sufficient to prove falsity, because liability attaches to a false claim to the government, not "improper internal policies"). Relator has therefore failed to plead fraud with particularity, and her claims must be dismissed.

**B.** **The FAC's Allegations as to Specific Patients Fall Short of Rule 9(b)'s Particularity Standard.**

Relator's one attempt to plead fraud with particularity by describing the alleged treatment of "specific patient examples" also falls short of Rule 9(b)'s rigorous standards. *See* FAC ¶¶ 79-89.

First, Relator does not claim that a sinuplasty was medically unnecessary for a single one of the patients identified. Instead, Relator merely alleges that somebody modified some of the patient records. But the alleged edits to patient records do not support that the treatment was medically unnecessary. In one instance, the language removed from the patient chart actually *supported* a sinuplasty. *See* FAC ¶ 83 (editors allegedly removed a reference to "recurring sinus infections"). In other cases, the alleged edits are irrelevant to the patient's eligibility for a sinuplasty. *See* FAC ¶ 81 (editors allegedly removed PA note that allergy testing should take place after the sinuplasty was completed); ¶ 82 (editors allegedly removed PA's note that patient should be referred to an allergist); ¶ 88 (PA notes

about patient conditions were allegedly removed, without alleging whether other relevant content was retained); ¶ 89 (editors allegedly removed statement that patient should not have narcotics or valium).

Relator's pleadings as to specific patient examples also rely heavily on information and belief, which is not sufficiently specific to meet Rule 9(b)'s exacting standards. In each of the ten identified patients, she pleads "on information and belief" that such bills were submitted, and "on information and belief" that the bills were "premised on the false documentation" allegedly in patient records. She does not base her claims on the medical examinations performed by PAs and physicians over the course of their treatment. *See* FAC ¶¶ 80, 82-89. But "[a]llegations of fraud based on information and belief usually do not satisfy the degree of particularity required under Rule 9(b)." *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987), particularly when the facts at issue are fairly accessible to the relator, as here. Relator's resort to pleading on information and belief, even though she claims to have personal knowledge of patients treated at Trinity ENT, further illustrates the insufficiency of facts in her allegations.

### C.     Relator Has Failed to Plead Claims Against Most Defendants with Particularity Under Rule 9(b).

Rule 9(b)'s particularity standard also requires dismissal of the claims regarding many of the identified entity Defendants. The FAC has *no substantive allegations* about Defendants Arizona Breathe Free, Breathe Free of Florida, LLC, Breathe Free Sinus & Allergy Centers of Florida, LLC, SoCal Breathe Free, or Dallas Breathe Free. Indeed, the FAC does not name a single employee or officer of any of these clinics or identify a single

allegedly fraudulent activity by any of them. Instead, the FAC relies on the vague, conclusory allegation that "NBF executives" provide training and billing services "to all of the NBF Defendants so that each of them operates in the same fraudulent manner." FAC ¶ 5.

Such conclusory allegations "without particular acts or omissions of each defendant" are insufficient. *Desert Plants Conservancy LLC v. Parsons*, No. 11-cv-01599, 2012 WL 13019154, at *4 (D. Ariz. July 6, 2012). When a complaint fails to "state[ ] clearly how each and every defendant is alleged to have violated plaintiffs' legal rights" and instead relies on "everyone did everything" allegations, dismissal is required. *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011). The Ninth Circuit has held that:

> Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.

*Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (citation modified); *see also*, *Jones v. GEICO Cas. Co.*, No. 20-cv-01734, 2021 WL 3602855, at *7 (D. Ariz. Aug. 13, 2021) (dismissing claims against GEICO affiliates where complaint merely alleged that these entities were affiliated with each other but otherwise "fail[ed] to describe the role that [the affiliates] played in the alleged fraud"). Therefore, the claims against the above-named Defendants must be dismissed.

## III.     THE CONSPIRACY CLAIM SHOULD BE DISMISSED.

To state a conspiracy claim under the FCA, the Complaint must allege "that the conspiring parties reached a unity of purpose or a common design and understanding, or a

MILLER & CHEVALIER
CHARTERED

meeting of the minds in an unlawful arrangement." *Id*. (quotations omitted) (dismissing conspiracy claim where "Relator has not sufficiently pleaded that the negotiations and agreement between [defendants] were made to avoid an obligation to the government or convert government funds"). Moreover, "[t]o adequately allege an FCA conspiracy, it is not enough for [a relator] to show there was an agreement that made it likely there would be a violation of the FCA; [he] must show an agreement was made in order to violate the FCA." *United States ex rel. Thomas*, 2023 WL 7413669, at *5 (quoting *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 917 (6th Cir. 2017). Relator cannot meet this standard.

First, Relator's conspiracy claim requires dismissal because, as shown above, Relator has failed to sufficiently plead any underlying violation of the FCA. *See Hawaii ex rel. Torricer v. Liberty Dialysis-Hawaii LLC*, 512 F. Supp. 3d 1096, 1118 (D. Haw. 2021) ("because the court has found no violations of the FCA in the first instance—there can be no conspiracy to violate the FCA if no false and material claims were submitted").

Further, for all Defendants except NBF and its officers, Relator has failed to plead any actions that could support a "meeting of the minds" between Defendants. *See United States ex rel. Thomas*, 2023 WL 7413669, at *5 (citation omitted). There is no allegation —even "on information and belief" — of an explicit or implicit agreement to commit fraud, or even that the other Defendants were aware of the NBF practices alleged. Nor does the FAC "allege which Defendants conspired with which or any facts regarding an agreement or overt act." *Calisesi ex rel. United States v. Hot Chalk, Inc.*, No. 13-cv-01150, 2015 WL

MILLER & CHEVALIER
CHARTERED

1966463, at *13, *16 (D. Ariz. May 1, 2015) (dismissing FCA conspiracy allegations where complaint failed to "plead an agreement or overt act by each Defendant that tends to show conspiracy"). Indeed, Relator appears to have pulled names of entities from the NBF website without any knowledge or understanding of what the entities do and then attempted to include them in the alleged scheme solely based on their status as NBF-affiliated entities.

Relator's *only* allegations supporting the participation of these entities in the alleged conspiracy are the non-specific and unsupported claims that Defendants "Ghanem, Borane, and Khanna created and oversaw each new NBF clinic," and that "each of them operates in the same fraudulent manner." FAC ¶¶ 5, 48, 109-111. But a generic assertion that [some] Defendants 'operated, directed, and conspired' with [others] does not satisfy Rule 9's particularity standard," and therefore is not enough to state a claim of conspiracy under the FCA. *United States ex rel. Martinez v. KPC Healthcare Inc.*, No. 15-cv-01521, 2017 WL 10439030, at *6 (C.D. Cal. June 8, 2017). *See also United States v. IASIS Healthcare LLC*, No. 15-cv-00872, 2016 WL 6610675, at *15 (D. Ariz. Nov. 9, 2016) (dismissing conspiracy claim on 9(b) grounds where "particular Defendants' agreement and role in the alleged scheme are not identified").

In the absence of facts supporting participation in a conspiracy by any of the centity Defendants other than NBF, Relator has only the allegation that NBF's own officers — Defendants Borane, Ghanem, and Khanna — collaborated to devise the alleged scheme and attempted to implement it among affiliated clinics. FAC ¶ 110. But even if Relator had alleged a shared attempt to defraud by NBF and its officers, a claim of conspiracy based on

MILLER & CHEVALIER
CHARTERED

those allegations would not be viable. Under the intra-corporate conspiracy doctrine, "'a corporation cannot conspire with its own employees or agents.'" *IASIS Healthcare LLC*, 2016 WL 6610675, at *15-16 (citation omitted) (finding doctrine barred FCA claims where alleged conspiracy was between the parent company and its subsidiary entities). *See also Torricer*, 512 F. Supp. 3d at 1118 (dismissing FCA conspiracy claim under doctrine where the three defendants were alleged to all be affiliated with one another based on their joint ownership, operation, and management of 19 dialysis clinics). Thus, a claim of conspiracy between the corporation and its executives cannot proceed.

## IV. THE COURT LACKS PERSONAL JURISDICTION OVER MANY OF THE DEFENDANTS.

The Complaint fails to establish personal jurisdiction over the following Defendants: Capitol Breathe Free Sinus and Allergy Centers, LLC, Breathe Free of Florida, LLC, Breathe Free Sinus & Allergy Centers of Florida, LLC; Dallas Breathe Free, and SoCal Breathe Free Sinus & Allergy Centers MSO, LLC. Under Arizona law and the Due Process Clause of the Fourteenth Amendment, personal jurisdiction requires that a nonresident defendant have "minimum contacts [with the forum state] . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *East v. Cnty. of Riverside*, No. 23-cv-00959, 2024 WL 1012975, at *2 (D. Ariz. Mar. 8, 2024) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014)) (noting the "analyses of personal jurisdiction under Arizona law and federal due process are the same").

Relator does not attempt to satisfy this standard. Instead, she alleges summarily that jurisdiction over out-of-state entities exists under 31 U.S.C. § 3732(a), which provides that

MILLER & CHEVALIER
CHARTERED

an action under the FCA may be brought in any judicial district in which any one defendant can be found, resides, transacts business, or in which any act proscribed by 31 U.S.C. § 3729 occurred. FAC ¶ 22. However, Relator's argument ignores what courts in this Circuit have repeatedly recognized: Section 3732(a) only addresses *venue*, not jurisdiction. *See United States ex rel. McCarthy v. Straub Clinic & Hosp., Inc*., 140 F. Supp. 2d 1062, 1071 (D. Haw. 2001). "As such, it does not provide exclusively for in personam jurisdiction; the Plaintiff[] must also show that the court may exercise personal jurisdiction over Defendants without violating the due process provisions of the Constitution." *Id*. *See also United States v. Universal Fruits & Vegetables Corp.*, 370 F.3d 829, 836 n.13 (9th Cir. 2004) ("31 U.S.C. § 3732(a) merely delineates proper venue for FCA actions, not jurisdiction over such claims").

Thus, Relator must still show that each defendant has minimum contacts with the forum state. *See, e.g.*, *United States ex rel. N. Santiam Watershed Council v. Kinross Gold USA, Inc.*, No. 96-cv-3673, 1998 WL 118176, at *3 (N.D. Cal. Mar. 9, 1998) ("section 3732 requires that the relators allege facts that if true would establish an independent basis for personal jurisdiction over each defendant"); *United States ex rel. Jacobs v. Advanced Dermatology & Skin Cancer Specialists, P.C.*, No. 20-cv-01373, 2022 WL 19914511, at *8 (C.D. Cal. Sep. 28, 2022) (dismissing FCA claims for lack of personal jurisdiction against one nonresident defendant where allegations did not establish contacts with California).

Because the FAC does not allege that these out-of-state Defendants purposefully directed their activities toward Arizona or an Arizona resident, purposefully availed

MILLER & CHEVALIER
CHARTERED

themselves of Arizona law, or otherwise engaged in actions related to Arizona, the case must be dismissed with prejudice as to each of them. *See generally Briskin v. Shopify, Inc.*, 135 F.4th 739, 750-51 (9th Cir. 2025) (establishing standard for minimum contacts) (*citing Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (C.D. Cal. 2004)).

## V.  THE QUI TAM PROVISIONS OF THE FCA VIOLATE THE CONSTITUTION.

The Court should dismiss all claims in this case because the *qui tam* provisions of the FCA, 31 U.S.C. § 3730(b), violate important constitutional requirements concerning separation of powers and the scope of executive authority. In particular, the FCA's authorization for *qui tam* relators to bring cases seeking punitive damages on behalf of the government poses grave concerns under Article II of the United States Constitution, which states that "[t]he executive Power shall be vested in a President of the United States of America." U.S. Const. art. II, § 1, cl. 1. Article II's Appointments Clause also states that the President may only delegate executive authority to appointed "Officers of the United States." U.S. Const. art. II, § 2, cl. 2. As set out below, recent precedent from the Supreme Court overrides outdated Ninth Circuit case law and favors dismissal of this case on constitutional grounds.

Under Section 3730(b) of the FCA, private relators are given a limited "right to conduct the action" when the government declines to intervene but nonetheless act "on behalf of and in the name of the Government." *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 425, 437 (2023) (quoting 31 U.S.C. § 3730(b)(4)(B)). In the 1993 decision *United States ex rel. Kelly v. Boeing Co.*, the Ninth Circuit considered

the "close question" regarding the constitutionality of the *qui tam* provisions and found that relators do not "exercise authority so 'significant' that the Constitution only permits an officer of the United States to exercise it." 9 F.3d 743, 758-59 (9th Cir. 1993). In other words, the Ninth Circuit did not find that the *qui tam* provisions of the FCA violate the Constitution.

However, recent Supreme Court rulings cast doubt on *Kelly* and make clear that the *qui tam* provisions of the FCA present insurmountable problems under the Appointments Clause. In particular, in 2020, the Supreme Court explained that the "power to seek daunting monetary penalties against private parties on behalf of the United States in federal court"—like that exercised by *qui tam* relators—is a "quintessentially executive power." *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 219 (2020). Further, the Supreme Court's recent decision in *Polansky* held that when the government does not intervene in a FCA case brought by a qui tam relator, the FCA does not afford the government "unfettered discretion" to dismiss a relator's complaint. 599 U.S. at 435-36. The relator's ability to proceed with a case in some circumstances, even if the government prefers to dismiss, underscores the significant executive power that is wielded by relators.

One other district court has already held that *Seila* and related cases must be read to prohibit *qui tam* relators from pursuing FCA cases like this one. In *United States ex rel. Zafirov v. Florida Medical Associates, LLC*, a Florida district court reviewed a "long line of Supreme Court precedents explaining that enforcement authority and charging discretion are core executive power, especially when coupled with the authority to impose a punitive

sanction." 751 F. Supp. 3d 1293, 1310-13 (M.D. Fla. 2024). The court found that these cases, which post-date and supersede the Ninth Circuit's *Kelly* decision, render *qui tam* cases unconstitutional.[3] *See id.* at 1323-24. The same rationale applies to this case and favors dismissal of all claims.

## VI. AMENDING THE COMPLAINT WOULD BE FUTILE.

When a plaintiff seeks to amend a complaint, a "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, leave to amend should be denied if the court "determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)). "The standard for assessing whether a proposed amendment is futile is the same as the standard imposed under Rule 12(b)(6) of the Federal Rules of Civil Procedure, although 'viewed through the lens of the requirement that courts freely give leave to amend when justice so requires.'" *James River Ins. Co. v. Thompson*, No. 20-cv-01052, 2021 WL 424088, at *1 n.2 (D. Ariz. Feb. 8, 2021) (quotation marks omitted).

Despite amending the complaint once already, Relator has failed to add the factual details required to successfully proceed with her claims under Rules 12(b)(6) and 9(b). Allowing another amendment would be futile because Relator's successive pleading attempts demonstrate that she has no facts to allege regarding physicians' medical necessity

---

[3] *Zafirov* is currently on appeal to the Eleventh Circuit.

MILLER & CHEVALIER
CHARTERED

determinations or government billing decisions. Nor does she have facts to allege concerning the business practices of the various other Defendant entities where she did not work. Because the viability of Relator's alleged FCA violations depends on the existence of just such facts, the FAC should be dismissed without leave to amend.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Relator's FAC in its entirety, with prejudice.

Dated: November 25, 2025

SCHERTLER ONORATO MEAD & SEARS, LLP

By:*/s/ Lisa Manning (with permission)*
    Lisa Manning

*Attorneys for Defendant Manish Khanna, MD*

MILLER & CHEVALIER CHARTERED

By: */s/ Lauren E. Briggerman*
    Lauren E. Briggerman

*Attorney for Defendants National Breathe Free Sinus & Allergy Centers LLC, Capitol Breathe Free Sinus and Allergy Centers LLC, Arizona Breathe Free Sinus & Allergy Centers LLC, Breathe Free of FL LLC, Breathe Free Sinus & Allergy Centers of Florida LLC, SoCal Breathe Free Sinus & Allergy Centers MSO LLC, Dallas Breathe Free Sinus & Allergy Centers LLC, Trinity ENT and Facial Aesthetics, LLC, Nabiel Matthew Ghanem, and Taylor Borane*

MILLER & CHEVALIER CHARTERED